UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS BARRY CURRIN,

     Petitioner,                 Case No. 11-14969

v.

                                 HON. AVERN COHN

THOMAS A. BIRKETT,

     Respondent.

_____/

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Louis B. Currin, (Petitioner), is currently incarcerated at the Puglsey Correctional Facility in Kinglsey, Michigan. Petitioner filed a pro se habeas petition, in which he challenges his 2009 convictions for assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. Petitioner is serving a sentence of nine to eighteen years. Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims are either procedurally defaulted or without merit. For the reasons which follow, the petition will be denied.

### II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the Saginaw County Circuit Court. Petitioner filed an appeal of right with the Michigan Court of Appeals, in which he raised the claims that he now presents in this petition. The Michigan Court of Appeals affirmed petitioner's conviction. People v. Currin, No.

294195, 2011 WL 520218 (Mich. Ct. App. Feb. 15, 2011).  Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, in which he raised the same claims that he raised in his appeal before the Michigan Court of Appeals, as well as additional claims which are not before the Court.  The Michigan Supreme Court denied petitioner leave to appeal. People v. Currin, 489 Mich. 976 (2011) (unpublished table decision).

Petitioner has now filed a petition for writ of habeas corpus, on the following grounds:

I. The trial court asked questions of Petitioner that revealed the court's negative opinion of Petitioner and his defense.  The court also showed its fear of Petitioner by having the knife removed from his proximity.  The court denied Petitioner his Constitutional right to an impartial judge.  Petitioner is entitled to a new trial.

II. The trial court failed to request an instruction on a lesser included, misdemeanor offense with respect to the assault charge.  Counsel provided ineffective assistance.

III. The trial court denied Petitioner his right to a speedy trial by allowing the matter to remain pending for 26 months before going to trial.

IV. The trial court erred in the scoring of Offense Variable 9.  The resulting guidelines range is therefore incorrect.  The court imposed a sentence that exceeds the maximum of the correct guidelines range.

### III. Facts

The material facts leading to petitioner's conviction are gleaned from the trial court record as follows:

On May 14, 2007, John Neville, an employee at Saginaw Wheels and Deals, and the owner, Shannon Garchow, were preparing to open the business at 9:00 a.m.  As the two men entered the building, petitioner was standing outside wearing a Kangol style

hat, a trench coat, a sport coat underneath it with a dress shirt, black dress slacks and dress shoes.  Petitioner was holding an umbrella.  Neville paid little attention to petitioner because he was standing at a bus stop (Tr. II, pp. 89-92, 126).

Once inside, Neville heard a knock on the garage door and saw petitioner standing at the door.  Petitioner asked about some tires and Neville told him he would have to wait a few minutes until the stored opened.  Neville did not open the door. (Tr. II, pp. 93-99).

A few minutes later, Neville noticed that petitioner had entered the store and was standing next to him.  In addition to the suit and trench coat, petitioner was wearing black leather gloves.  Neville again told petitioner he would have to wait and then started to go behind the counter.  Petitioner followed Neville behind the counter.  Neville informed petitioner that he was not allowed behind the counter and asked him to get behind the counter.  Petitioner responded by saying, "no, this is a robbery" before pulling out a plastic shopping bag with an object in it.  Neville assumed by the size and shape of the object that it was some sort of gun.  Petitioner pointed this object right at Neville's head.  Neville informed petitioner that he would get his wallet, but instead pulled out a knife that he carried for protection.  The two men began struggling over the knife.  Neville tried to turn the barrel of what he assumed was a gun away from him. (Tr. II, pp. 99-106, 158).  The police later discovered that the item that petitioner was carrying in the bag was the barrel and action to a shotgun (not intact). (Tr. III, pp. 7-8).

After a brief struggle, Neville fell backwards over a step ladder.  Petitioner began hitting Neville on the side of his head with a hard object.  Petitioner struck Neville at least six times.  Neville was subsequently treated at the hospital for bruises and

3

abrasions on the back of his head and bruises all the way down the right side of his body caused by petitioner's assault. (Tr. II, pp. 106-07, 116).

While Neville and petitioner struggled, Garchow entered the room.  Neville shouted to Garchow that petitioner had a gun. (Tr. II, p. 108).  Garchow began yelling and screaming.  Petitioner "stood up, turned around and . . . came at" Garchow. Petitioner yelled "come here, come here, come here" at Garchow as he ran at him. Petitioner chased Garchow out of the store and down the street and into a parking lot, as Garchow talked to a 911 operator about what was happening. (Tr. II, pp. 159-62).

Once Garchow determined that petitioner had nothing in his hand, he began following petitioner.  Petitioner took off his trench coat and his suit coat and lost his hat as he ran.  Petitioner also threw off his leather gloves and a pair of rubber gloves he had on under the leather gloves. (Tr. II, pp. 163-64, Tr. III, p. 17).  Petitioner later explained that he was wearing the latex gloves and leather gloves together "because it was raining and he didn't want to get his hands wet." (Tr. III, p. 47).

Petitioner admitted assaulting Neville, but claimed it was in self-defense because Neville had a knife. (Tr. III, p. 49).  Petitioner later altered his story to claim that Neville grabbed something that looked like a gun in addition to the knife. (Tr. III, p. 87). Petitioner admitted he discarded his clothing as he was running because "he was hot." (Tr. III, pp. 50, 93, 111).

Petitioner was acquitted of an armed robbery charge but convicted of assault with intent to do great bodily harm less than murder.

## IV.  Analysis

### A.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>> (1)    resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State
>> court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

Id. at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

5

'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Indeed, a

6

"readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

## B.  Judicial Bias/Misconduct

In his first claim, Petitioner says that the judge was biased and engaged in misconduct by asking petitioner two questions while he was on the stand and for asking that a knife be removed from near the witness stand while petitioner was testifying.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case.  See Bracy v. Gramley, 520 U.S. 899, 904-05 (1997).  However, to establish a claim of judicial bias, a defendant must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. United States v. Lowe, 106 F. 3d 1498, 1504 (6th Cir. 1997).  "Under this standard, '[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required.'" Getsy v. Mitchell, 495 F.3d 295, 311 (6th Cir.2007)(quoting Williams v. Anderson, 460 F.3d 789, 814 (6th Cir. 2006)).  The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias. Liteky v. United States, 510 U.S. 540, 555-56 (1994).  "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered

7

judge's ordinary efforts at courtroom administration-remain immune." Id.  A judge is required to recuse himself or herself only where he has actual bias or "a predisposition 'so extreme as to display clear inability to render fair judgment.'" Johnson v. Bagley, 544 F. 3d 592, 597 (6th Cir. 2008)(quoting Liteky, 510 U.S. at 551).  In reviewing a judicial bias claim, a federal habeas court should employ the initial presumption that the assigned trial judge properly discharged his or her official duties. See Johnson v. Warren, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

Trial courts have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty. See Brown v. Palmer, 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).  However, in reviewing an allegation of judicial misconduct in a habeas proceeding, a federal court must ask itself whether the trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. Id.  To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. Id.  A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. McBee v. Grant, 763 F. 2d 811, 818 (6th Cir. 1985); Brown, 358 F. Supp. 2d at 657.

Petitioner says that the judge acted improperly by asking petitioner the following questions during defense counsel's redirect examination of petitioner:

8

THE COURT: I have just a couple of questions. When this little guy started to get off on you, or reach for the knife, why didn't you just leave and-or when the owner came out and say this guy's 's [sic] going nuts on me or whatever, say-why didn't you do that?

THE WITNESS [petitioner]: Well, when Shannon came around there, all he did was say stop it, and I couldn't stop it because the guy was still sticking me, sticking at me.  But when he did stop, I quit.

THE COURT: When's the first time you ever said anything to Detective Grigg about him calling you that name and coming at you with the knife and that, when-today?

THE WITNESS: Yes.

THE COURT: Okay. I don't have anything further ...

(Tr. III, p. 121).

The Michigan Court of Appeals rejected petitioner's claim as follows:

Defendant asserts that the trial court's first question suggested that the trial court believed that defendant should have fled the scene when one of the store workers pulled a knife.  Defendant claims this undermined his self-defense claim and "suggest[ed] that the court did not believe [defendant's] claim that the complainant started the fight."  Defendant asserts that the trial court's second question "challenge[d] [defendant's] version of events" and "communicated its belief that [defendant] made up the story for purposes of trial."

Although this exchange might have cast doubt on the credibility of defendant's testimony and his defense, that was a result of his answers, not the result of an improper question.  These questions were limited in scope, material to the issues, and did not communicate to the jury any opinion that the trial judge may have had regarding these matters.  Moreover, defendant testified that he did in fact start the fight.  He said that he grabbed the store worker by his collar with both hands after Neville insulted him.  The trial court's questioning produced fuller testimony and clarified what defendant told the investigating officer.  As such, these questions did not unjustifiably arouse suspicion in the mind of the jury as to a witness's credibility or influence the jury to the detriment of the defendant's case.

Currin, Slip. Op. at 2. (internal citation omitted).

The Michigan Court of Appeals' analysis and conclusion is not an unreasonable

9

determination of the facts nor contrary to Supreme Court precedent.  It is not

unconstitutional under the Due Process Clause for a trial court seek clarification from

witnesses at a criminal trial.  <u>Brown v. Palmer,</u> 358 F. Supp. 2d at 657.  The Court

agrees with the court of appeals that the trial court's questions to petitioner were not

improper.  As such, petitioner is not entitled to relief on this ground.

Petitioner next says that the trial court "expressed fear or distrust" of him when

he moved a knife away from the witness stand while petitioner was testifying.

The Michigan Court of Appeals rejected petitioner's claim as follows:

The record shows that defendant received a fair trial.  First, this unusual
situation was created by defense counsel, who apparently placed the knife
near the witness stand during defendant's testimony.  Second, although the
incident was unfortunate, the trial court explained that its only concern was
safety.  A trial court has discretion to take the steps necessary to prevent
injury to persons in the courtroom.  Given defendant's rather extensive
criminal history dating back to 1975, the trial court was clearly justified in
regard to its safety concerns.

Moreover, defendant cannot show he was prejudiced as a result of the trial
court's questioning or the knife incident.  The trial court instructed the jury
that its comments, rulings, questions, and instructions are not evidence, and
that a person accused of a crime is presumed innocent.  The trial court also
instructed, "If you believe that I have an opinion about how you should
decide this case, you must pay no attention to that opinion." "[J]urors are
presumed to follow their instructions."  Under the circumstances, the trial
court did not abuse its discretion denying defendant's motion for a mistrial.

<u>Currin,</u> Slip. Op. at 3. (internal citations omitted).

The Court agrees with the Michigan Court of Appeals' analysis and conclusion.

A trial court's decision to increase security measures in a courtroom does not evince

judicial bias or impartiality. See <u>Coleman v. Estep,</u> 391 Fed. Appx. 697, 699 (10th Cir.

2010).  Petitioner is therefore not entitled to habeas relief on this ground.

### C.  Lesser Included Jury Instruction

Petitioner next contends that he is entitled to habeas relief because the trial court failed to instruct the jurors on the lesser included misdemeanor offenses of aggravated assault and assault and battery.

The Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. See Adams v. Smith, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(citing to Beck v. Alabama, 447 U.S. 625, 638, n. 4 (1980)).  Thus, a trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. Id.  Beck has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." Campbell v. Coyle, 260 F. 3d 531, 541 (6th Cir. 2001).  Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. Bagby v. Sowders, 894 F. 2d 792, 797 (6th Cir. 1990); See also Scott v. Elo, 302 F. 3d 598, 606 (6th Cir. 2002).

As a result, petitioner is not entitled to habeas relief on his claim that the trial court failed to instruct the jury on the lesser included misdemeanor offenses of aggravated assault and assault and battery. See Worden v. McLemore, 200 F. Supp. 2d 746, 756 (E.D. Mich. 2002).

### D.  Speedy Trial

11

Petitioner next contends that he was denied his right to a speedy trial.[1]  The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI.  To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972).  No single factor is determinative, rather a court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. 407 U.S. at 533.  The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" Vermont v. Brillon, 556 U.S. 81, 89 (2009)(quoting Barker, 407 U.S., at 522)(quoting Beavers v. Haubert, 198 U.S. 77, 87 (1905)).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530.  Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. Doggett v. United States, 505 U.S. 647, 651-52 (1992).  Courts have generally found postaccusation delays that approach one year to be "presumptively prejudicial". Id. 505

---

[1]Respondent says that this claim is procedurally defaulted.  Petitioner, however, asserts that trial counsel was ineffective for failing to file a motion to dismiss the charges on speedy trial grounds.  Ineffective assistance of counsel may establish cause for procedural default.  Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).  Because the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, the better course is to consider the merits of the claim.  See Cameron v. Birkett, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

U.S. at 652, n. 1; United States v. Brown, 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000).

Petitioner was arrested on May 14, 2007 and brought to trial some twenty six months

on July 7, 2009.  Because the twenty six month delay between petitioner's arrest and

trial is presumptively prejudicial, this Court must engage in an examination of the

remaining Barker factors. See U.S. v. Bass, 460 F.3d 830, 836 (6th Cir. 2006).

      With respect to the second Barker factor, the reasons for the delay, a court must

determine "whether the government or the criminal defendant is more to blame for [the]

delay." Maples v. Stegall, 427 F.3d 1020, 1026 (6th Cir. 2005)(citing Doggett, 505 U.S.

at 651).  When evaluating a speedy trial claim, delays caused by the defense are to be

weighed against the defendant. Vermont v. Brillon, 556 U.S. at 90; See also U.S. v.

Brown, 498 F. 3d 523, 531 (6th Cir. 2007).

      Here, the first adjournment of petitioner's trial was at petitioner's request so that

he could file an interlocutory appeal in another criminal case out of the Saginaw County

Circuit Court. (Tr. 7/11/2007, pp. 2-3, Tr. 11/14/07, pp. 2-3).  On both occasions,

petitioner expressly waived his right to a speedy trial, at least while the interlocutory

appeal was pending in the Michigan Court of Appeals.  Petitioner's request for an

adjournment of his case during the pendency of his interlocutory appeal is attributable

to the defense.  "A defendant who resorts to an interlocutory appeal normally should

not be able upon return to the [trial] court to reap the reward of dismissal for failure to

receive a speedy trial." U.S. v. Loud Hawk, 474 U.S. 302, 316 (1986).

      Another adjournment took place on July 14, 2008 because one his attorneys

was leaving the country and needed to withdraw from the case.  The trial court

indicated that he would appoint new counsel for petitioner. (Tr. 7/14/08, p. 2).  Another

adjournment took place on November 18, 2008 because petitioner's second attorney was in trial in another court. (Tr. 11/18/08, p. 3).  A third adjournment occurred on May 19, 2009 because that petitioner's second attorney moved to withdraw from petitioner's case after accepting employment with the Underground Railroad.  The trial court again indicated that he would appoint new counsel for petitioner. (Tr. 5/19/09, pp. 3-4, 8-10). Delays caused by defense counsel are also attributable to the defense for speedy trial purposes.  Vermont v. Brillon, 556 U.S. at 90-91.

Two additional adjournments occurred on April 15, 2008 and again on January 21, 2009 because of conflicts in the court's docket. (Tr. 4/15/08, p. 2, Tr. 1/21/09, p. 2). Neutral reasons such as negligence or overcrowded dockets weigh against the state less heavily.  See Vermont v. Brillon, 556 U.S. at 90; Barker, 407 U.S. at 531; Maples, 427 F. 3d at 1026.

At best, petitioner has shown that two of the six adjournments are attributable to the prosecution (the adjournments due to the trial court's docket).  However, these should be given minimal weight, because there is no showing that these adjournments were done to gain a tactical advantage over the petitioner.

Overall, there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution.  There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, Burns v. Lafler, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004)(quoting Davis v. McLaughlin, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over the petitioner.  Id.; See also Brown, 498 F. 3d at 531.

With regard to the third Barker factor, "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32.  A criminal defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id.

Moreover, petitioner did not assert his right to a speedy trial until May 19, 2009, or some two years after he had been arrested.  Petitioner's two year delay in asserting his right to a speedy trial weighs against a finding that his right to a speedy trial was violated. See U.S. v. Flowers, 476 Fed. Appx. 55, 63 (6th Cir. 2012).

Finally, petitioner is not entitled to habeas relief on his speedy trial claim, because he has not shown that his defense was prejudiced by this delay. Burns, 328 F. Supp. 2d at 722.  Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. See Trigg v. State of Tenn., 507 F. 3d 949, 954 (6th Cir. 1975).  Moreover, any prejudice to petitioner from his pre-trial incarceration "is too slight to constitute an unconstitutional denial of his right to a speedy trial," in light of the fact that the other Barker factors do not support petitioner's speedy trial claim. See Wells v. Petsock, 941 F. 2d 253, 259 (3rd Cir. 1991).

Overall, petitioner is not entitled to habeas relief on his speedy trial claim.


### E.  Ineffective Assistance of Counsel

As part of his second and third claims, petitioner contends that he was denied

15

the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. Id.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011)(quoting Harrington, 131 S. Ct. at 792).  The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect

16

but whether that determination was unreasonable-a substantially higher threshold.'"
Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)(quoting Schriro v. Landrigan, 550
U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of
the Strickland standard was unreasonable.  This is different from asking whether
defense counsel's performance fell below Strickland's standard." Harrington v. Richter,
131 S. Ct. at 785.  Indeed, "because the Strickland standard is a general standard, a
state court has even more latitude to reasonably determine that a defendant has not
satisfied that standard." Knowles, 556 U.S. at 123 (citing Yarborough v. Alvarado, 541
U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial
review" applies to a Strickland claim brought by a habeas petitioner. Id.  This means
that on habeas review of a state court conviction, "[A] state court must be granted a
deference and latitude that are not in operation when the case involves review under
the Strickland standard itself."Harrington, 131 S. Ct. at 785.  "Surmounting Strickland's
high bar is never an easy task." Id. at 788 (quoting Padilla v. Kentucky, 130 S. Ct.
1473, 1485 (2010)).

As part of his second claim, petitioner contends that trial counsel was ineffective
for failing to request that the jury be instructed on the lesser included misdemeanor
offenses of aggravated assault and assault and battery.

A failure to request charges on all possible lesser included offenses may be
proper trial strategy.  See Tinsley v. Million, 399 F. 3d 796, 808 (6th Cir. 2005); See also
Colon v. Smith, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989).  Submission of lesser
included offenses may give the jury a basis of finding petitioner guilty of a crime where
the prosecution may be unable to prove the elements of the original crime beyond a

17

reasonable doubt.  Because counsel may have wished to avoid this possibility, particularly where the primary defense raised was that petitioner acted in self-defense, the decision not to request lesser included offenses does not amount to ineffective assistance of counsel.  Colon, 723 F. Supp. at 1008; see also Lewis v. Russell, 42 Fed. Appx. 809, 810-11 (6th Cir. 2002)(trial counsel's failure during murder trial to request jury instruction on lesser-included offense of voluntary manslaughter constituted reasonable strategic decision consistent with defendant's effort to seek full acquittal on basis of self-defense, and thus did not constitute deficient performance).    Petitioner in his third claim contends that trial counsel was ineffective for failing to move for dismissal of the charges on speedy trial grounds.  The Court has already determined that petitioner's speedy trial claim is without merit.  A defense counsel is not ineffective for failing to bring a speedy trial motion that is meritless. See Shanks v. Wolfenbarger, 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005).

In sum, petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

## F.  Sentencing Guidelines

In his last claim, petitioner contends that the trial court incorrectly scored ten points against Offense Variable 9 of the Michigan Sentencing Guidelines.  This claim is is not a cognizable claim for federal habeas review, because it is basically a state law claim.  See Tironi v. Birkett, 252 Fed. Appx. 724, 725 (6th Cir. 2007); Thomas v. Foltz, 654 F. Supp. 105, 107 (E.D. Mich. 1987).  "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." See Mitchell v. Vasbinder, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).  "[I]n short,

18

petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." Doyle v. Scutt, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. Id. Petitioner is not entitled to habeas relief on his fourth claim.

## V. Conclusion

For the reasons stated above, petitioner is not entitled to habeas relief on any of his claims. Accordingly, the petition for a writ of habeas corpus is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore **DECLINES** to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[2] See Slack v. McDaniel, 529 U.S. 473, 484 (2000). However, if petitioner chooses to appeal the Court's decision, he may proceed in forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

　s/Avern Cohn　　　　　　　　　　
UNITED STATES DISTRICT JUDGE

Dated:  December 11, 2013

CERTIFICATION

I hereby certify that a copy of the foregoing document was mailed to the attorneys/parties  of record on this date, December 11, 2013, by electronic and/or

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

ordinary mail.

       s/Carol Bethel for Sakne Chami
      Case Manager, (313) 234-5160